[This decision has been published in *Ohio Official Reports* at 94 Ohio St.3d 489.]

THE STATE OF OHIO, APPELLEE, *v*. MURRELL, APPELLANT.

[Cite as *State v. Murrell*, 2002-Ohio-1483.]

*Criminal law—Search and seizure—When police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.*

(No. 00-1757—Submitted October 17, 2001 at the Greene County Session—

Decided April 3, 2002.)

APPEAL from the Court of Appeals for Hamilton County, No. C-000103.

———————————

SYLLABUS OF THE COURT

When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. (*New York v. Belton* [1981], 453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768, 775, followed; *State v. Brown* [1992], 63 Ohio St.3d 349, 588 N.E.2d 113, syllabus, overruled; Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution, harmonized.)

———————————

ALICE ROBIE RESNICK, J.

{¶ 1} This case requires us to consider the allowable scope of an automobile search incident to the arrest of an occupant of the vehicle. For the reasons that follow, we overrule this court's decision in *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, and therefore affirm the judgment of the court of appeals.

I

Facts and Procedural History

{¶ 2} On September 15, 1999, a Cincinnati police officer stopped an automobile driven by defendant-appellant, Marvin Murrell, on a street with a posted speed limit of thirty-five miles per hour after the officer's laser device registered appellant's speed at forty-nine miles per hour. The officer ran a check on appellant's license, which showed that there was an outstanding warrant for appellant's arrest for failure to pay child support. The officer arrested appellant, handcuffed him, and placed him in the back seat of the police car.

{¶ 3} The officer then proceeded to search appellant's vehicle. On the floorboard in front of the driver's seat, the officer found a small cloth bag. He opened it and found crack cocaine and powdered cocaine. The officer then also arrested appellant for drug possession.

{¶ 4} Appellant was indicted on two counts of possession of cocaine. He filed a motion to suppress the results of the search, and the trial court held a hearing on the motion on November 19, 1999. The arresting officer provided the only testimony at the hearing, giving his account of the stop and arrest. The officer testified that the traffic stop was a routine one, that he never felt that he was in any danger during the course of the stop, that he never sought appellant's permission to search the vehicle, and that he would not have impounded the car (and therefore no inventory search of the vehicle would have occurred) if he had not found the cocaine.

{¶ 5} On February 10, 2000, the trial court granted the motion to suppress in a handwritten entry that gave no reasons for the ruling. The trial court apparently relied on this court's decision in *Brown*, 63 Ohio St.3d 349, 588 N.E.2d 113, in which this court held at the syllabus that "[a] police officer may not open a small, closed container found inside an automobile's glove compartment solely as a search incident to the driver's arrest for a traffic violation, after the officer has the

2

suspect—and sole occupant of the vehicle—under control in the police cruiser. (*New York v. Belton* [1981], 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, distinguished; the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, applied.)"

{¶ 6} The state appealed pursuant to R.C. 2945.67, certifying that the appeal was not taken for the purpose of delay and that the trial court's ruling rendered the state's proof so weak that any reasonable possibility of effective prosecution was destroyed. See Crim.R. 12(K) (formerly Crim.R. 12[J]).

{¶ 7} The court of appeals reversed the judgment of the trial court, distinguishing the situation before it from that in *Brown*. The court of appeals focused on the fact that *Brown*'s syllabus specifically mentioned arrest for a "traffic violation," and found that *Brown* did not apply because appellant was not arrested for a traffic violation but for nonpayment of child support. While acknowledging that the officer did not have probable cause to believe that there was contraband in the vehicle, the court of appeals upheld the search pursuant to the United States Supreme Court's *Belton* decision.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

II

Search of Automobile Incident to Arrest of Occupant

{¶ 9} In *Belton*, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775, the United States Supreme Court articulated a specific rule for automobile searches within the "search incident to arrest" exception to the warrant requirement of the Fourth Amendment to the United States Constitution.[1] The *Belton* court held that

---

1. The Fourth Amendment to the United States Constitution provides:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

"when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Footnotes omitted.) Earlier, the Supreme Court in *Chimel v. California* (1969), 395 U.S. 752, 762-763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694, a case not involving a motor vehicle, had held that when a police officer makes a lawful custodial arrest, a warrantless search of the person arrested and of the immediate surrounding area is justified to discover any weapons that the arrestee might seek to use and to prevent the concealment or destruction of evidence.

{¶ 10} The Supreme Court viewed its holding in *Belton* as the establishment of a bright-line rule that extended the principles of *Chimel* to arrest situations involving motor vehicles. The Supreme Court in *Belton*, in explaining why searching a closed container found in the passenger area of the vehicle is also permissible, further illuminated its reasoning, stating that "[i]t follows [from *Chimel*] that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. * * * Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." 453 U.S. at 460-461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775.

{¶ 11} In support of its decision to apply a bright-line rule, the *Belton* court stated that "as one commentator has pointed out, the protection of the Fourth and Fourteenth Amendments 'can only be realized if the police are acting under a set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law

enforcement.' LaFave, 'Case-By-Case Adjudication' versus 'Standardized Procedures': The Robinson Dilemma, 1974 S.Ct.Rev. 127, 142.

"* * *

"In short, '[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' *Dunaway v. New York* [1979], 442 U.S. 200, 213-214 [99 S.Ct. 2248, 2257, 60 L.Ed.2d 824, 836]." 453 U.S. at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 773-774.

{¶ 12} The *Belton* court then reviewed cases from other courts that had encountered the issue before it, and observed that "[w]hile the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of 'the area within the immediate control of the arrestee' when that area arguably includes the interior of an automobile and the arrestee is its recent occupant. Our reading of the cases suggests the generalization that articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary [item].' *Chimel*, 395 U.S. at 763 [89 S.Ct. at 2040, 23 L.Ed.2d at 694]. In order to establish the workable rule this category of cases requires, we read *Chimel'*s definition of the limits of the area that may be searched in light of that generalization." 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774-775.

{¶ 13} With this court's decision in *Brown*, 63 Ohio St.3d 349, 588 N.E.2d 113, Ohio follows a different rule on automobile searches incident to an arrest than was established in *Belton*. The *Brown* opinion actually set forth two separate rationales for not following *Belton*. Although the syllabus in *Brown* and the text of the opinion (see *id.* at 351-352, 588 N.E.2d at 115) assert that the court "distinguishe[s]" the situation in that case from the situation in *Belton*, this court in

*Brown* also stated, "If *Belton* does stand for the proposition that a police officer may conduct a detailed search of an automobile *solely* because he has arrested one of its occupants, *on any charge*, we decline to adopt its rule." (Emphasis *sic*.) *Id.* at 352, 588 N.E.2d at 115. The *Brown* opinion then included a footnote to the effect that if the two cases were *not* distinguishable, the decision to decline to adopt *Belton*'s rule was based on Section 14, Article I of the Ohio Constitution[2]: " 'Individual States may surely construe their own constitutions as imposing more stringent constraints on police conduct than does the Federal Constitution.' " *Id.* at fn. 3, quoting *California v. Greenwood* (1988), 486 U.S. 35, 43, 108 S.Ct. 1625, 1630, 100 L.Ed.2d 30, 39. See, also, *Brown* at 352, 588 N.E.2d at 115 (stating that the warrantless search of the automobile violated the Ohio Constitution).

{¶ 14} A close reading of both *Belton* and *Brown* reveals that, although the *Brown* opinion attempted to distinguish that case from *Belton* based on the differing facts of the two cases, the attempt was unfounded. While it appears clear that there was probable cause for the search in *Belton*, while there was not in *Brown* (the point upon which the opinion in *Brown* relied to distinguish the two, *id.* at 351-352, 588 N.E.2d at 115), the United States Supreme Court in *Belton* deliberately chose *not* to analyze the situation before it under the automobile exception to the warrant requirement, which is based on probable cause. *Id.*, 453 U.S. at 462-463, 101 S.Ct. at 2865, 69 L.Ed.2d at 776, fn. 6 ("Because of this disposition of the case, there is no need here to consider whether the search and seizure were permissible under the so-called 'automobile exception.' "). Instead, the *Belton* court purposely determined to craft a bright-line rule of sufficient scope to encompass the facts of *Brown*, as well as those of the case *sub judice*.

---

2. Section 14, Article I of the Ohio Constitution provides:
"The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated; and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized."

**{¶ 15}** Given these considerations, it becomes apparent that this court's statement in *Brown*, 63 Ohio St.3d at 352, 588 N.E.2d at 115, that "the warrantless search of Brown's automobile was unreasonable and violated the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution" was, at most, only partially supportable. Since *Belton* should not have been distinguished, the United States Supreme Court's decision in *Belton* as to the Fourth Amendment was binding on this court, and this court should have held that the Fourth Amendment was not violated by the search in *Brown*. Therefore, the only possibly justifiable rationale behind this court's decision in *Brown* is the alternative reasoning set forth in that case—that the search was inconsistent with Section 14, Article I of the Ohio Constitution.

III

*State v. Brown* Reassessed

**{¶ 16}** The resolution of the case before us thus turns on a consideration of this court's decision in *Brown*, which can accurately be said to have relied on Section 14, Article I to decline to give full effect to *Belton*. Within that consideration, and depending on its outcome, a further issue potentially could arise in the circumstances here, based on the court of appeals' decision to distinguish *Brown*—if *Brown* should be reaffirmed, what should its scope be?

**{¶ 17}** The Fourth Amendment and Section 14, Article I contain virtually identical language, with both prohibiting unreasonable searches and seizures and both imposing a warrant requirement. See *State v. Robinette* (1997), 80 Ohio St.3d 234, 238, 685 N.E.2d 762, 766-767. For that reason, this court observed in *Robinette* that, for some time, it "has interpreted Section 14, Article I of the Ohio Constitution as affording the same protection as the Fourth Amendment." *Id.* at 238, 685 N.E.2d at 767. See, also, *State v. Orr* (2001), 91 Ohio St.3d 389, 391, 745 N.E.2d 1036, 1038-1039. In making that point, this court in *Robinette* cited a number of cases, including *State v. Geraldo* (1981), 68 Ohio St.2d 120, 125-126,

22 O.O.3d 366, 369-370, 429 N.E.2d 141, 145-146 (reach of Section 14, Article I is coextensive with that of Fourth Amendment); and *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, fn. 1 (this court has interpreted Section 14, Article I to protect the same interests and in a manner consistent with the Fourth Amendment).

**{¶ 18}** After reviewing the cases, this court in *Robinette*, 80 Ohio St.3d at 239, 685 N.E.2d at 767, determined that "we should harmonize our interpretation of Section 14, Article I of the Ohio Constitution with the Fourth Amendment, unless there are persuasive reasons to find otherwise." This court in *Robinette* obviously left open the possibility that, depending on the circumstances, this court may decide to give independent effect to Section 14, Article I in the appropriate case.

**{¶ 19}** In actually relying on Section 14, Article I to find that the evidence was inadmissible on the facts before it, the *Brown* court did not cite any authorities, including those cited in *Robinette* that appear inconsistent, for its decision to interpret Section 14, Article I more stringently than the Fourth Amendment. Also, *Robinette*, decided more than five years after *Brown*, did not cite *Brown* in its consideration of when Section 14, Article I might be interpreted differently from the Fourth Amendment.

**{¶ 20}** As several of the briefs in this case indicate, most jurisdictions, unlike Ohio in *Brown*, follow the *Belton* rule regarding automobile searches incident to a lawful arrest, even where the arrestee has been handcuffed and placed in a police vehicle at the time of the search. See, *e.g., State v. Fernon* (2000), 133 Md.App. 41, 57-58, 754 A.2d 463, 472; *United States v. Doward* (C.A.1, 1994), 41 F.3d 789, 791-792, fn. 1; *United States v. White* (C.A.6, 1989), 871 F.2d 41, 44. Included within the group of states that follow *Belton* are states with specific constitutional provisions that, like Ohio's Section 14, Article I, essentially mirror the Fourth Amendment. See, *e.g.*, *State v. Charpentier* (1998), 131 Idaho 649, 962 P.2d 1033; *State v. Fry* (1986), 131 Wis.2d 153, 171-172, 388 N.W.2d 565, 573.

While a few states, such as Ohio in *Brown*, have rejected *Belton* in part, most states have chosen to fully embrace *Belton'*s bright-line rule.

{¶ 21} In light of the standard set forth in *Robinette*, we take this opportunity to review the propriety of this court's decision in *Brown*. To the extent that *Brown* apparently found persuasive reasons not to harmonize Section 14, Article I with the Fourth Amendment in the situation before it, we believe that the time has come to reassess *Brown* and the assumptions upon which that decision was based.

{¶ 22} As a starting point, it is critical to recognize that *Belton'*s rule applies only when there is *already* a lawful custodial arrest. Concerns about a possible lack of probable cause to conduct a search in a *Belton* situation are eased by the fact that probable cause *must* have been present to arrest the occupant of the vehicle in the first place. In addition, as the *Belton* holding explicitly states, a *Belton* search must be "contemporaneous" with the arrest, occurring at or very near the time of the arrest. *Id.*, 453 U.S. at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. Furthermore, on its face, *Belton's* rule applies only if an arrest is "custodial." *Id.* The United States Supreme Court, in *Knowles v. Iowa* (1998), 525 U.S. 113, 118-119, 119 S.Ct. 484, 488, 142 L.Ed.2d 492, 497-498, found that a "search incident to citation," in which a police officer searched a vehicle incident to the issuance of a citation in lieu of an arrest in a routine traffic stop, violated the Fourth Amendment when there was no prior arrest to justify the search.[3] *Belton* does not authorize indiscriminate fishing

---

3. The United States Supreme Court recently reiterated its commitment to *Belton'*s bright-line rule in *Florida v. Thomas* (2001), 532 U.S. 774, 121 S.Ct. 1905, 150 L.Ed.2d 1. In that case, the Supreme Court granted certiorari "to consider whether [the *Belton*] rule is limited to situations in which the officer initiates contact with the occupant of a vehicle while that person remains inside the vehicle." *Id.* at ___, 121 S.Ct. at 1908, 150 L.Ed.2d at 5. However, the court never reached that issue on the merits, holding that the case did not involve a final judgment or decree from the court below and that the case did not fit any category that would nevertheless allow it to be treated as final for jurisdictional purposes, and so dismissed the writ for want of jurisdiction. *Id.* at ___, 121 S.Ct. at 1909-1910, 150 L.Ed.2d at 6. The specific issue in *Thomas* is not relevant to the case *sub judice*.

expeditions; only motor vehicles very recently occupied by those who have already been lawfully arrested are subject to a *Belton* search.

{¶ 23} The *Belton* court reached a calculated conclusion that a search of the motor vehicle incident to arrest in this situation is a reasonable one, justified principally by concerns for officer safety and preserving evidence, and the advantages of having a bright-line rule in such situations. We find it significant that Justice Stewart, who wrote the majority opinion in *Belton*, also wrote the majority opinion in *Chimel*, which established strict limitations on the "search incident to arrest" exception, and which reversed the conviction at issue in that case as based on a search the *Chimel* court determined to be unreasonable. See 395 U.S. at 768, 89 S.Ct. at 2043, 23 L.Ed.2d at 697. Obviously, Justice Stewart and the other justices in the majority in *Belton* believed that the specific concerns at issue in that case justified extension of the *Chimel* rule to cases involving an arrest of the occupant of a motor vehicle. Both *Chimel* and *Belton* are seminal Fourth Amendment decisions that contribute to a comprehensive jurisprudence regulating what is acceptable police conduct and what is not in warrantless searches incident to an arrest.

{¶ 24} We believe that the same considerations that led the *Belton* court to establish its bright-line rule justify the adoption today of that rule by this court. We now conclude that *Brown* was erroneously decided, and that this court in *Brown* failed to appreciate the practical advantages underlying *Belton*'s bright-line rule. The case before us and *Brown* do not present persuasive reasons to depart from the principle that Section 14, Article I and the Fourth Amendment should be harmonized whenever possible.

{¶ 25} For all the foregoing reasons, we conclude that in the circumstances before us we should harmonize the Fourth Amendment and Section 14, Article I of the Ohio Constitution. We thus overrule *Brown* and its syllabus paragraph. Consistent with *Belton*, we hold that when a police officer has made a lawful

custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. Under our holding, the warrantless search of appellant's vehicle did not violate the Fourth Amendment or Section 14, Article I.

{¶ 26} Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

DOUGLAS, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and PFEIFER, J., dissent.

_____

**MOYER, C.J., dissenting.**

{¶ 27} I respectfully dissent from the majority's conclusion that this court must overrule *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, for the sole purpose of aligning our jurisprudence with that of the United States Supreme Court. For the reasons that follow, I conclude that the trial court was correct in granting the motion to suppress based upon this court's decision in *Brown*.

{¶ 28} The overarching question, which the majority fails to satisfactorily answer, is why this court needs to reverse itself by overruling *Brown*, and in doing so, adopt the United States Supreme Court's bright-line rule announced in *Belton*. " '*[S]tare decisis* is a principle of policy and not a mechanical formula of adherence to the latest decision.' " *Gallimore v. Children's Hosp. Med. Ctr.* (1993), 67 Ohio St.3d 244, 257, 617 N.E.2d 1052 (Moyer, C.J., dissenting, quoting *Helvering v. Hallock* [1940], 309 U.S. 106, 119, 60 S.Ct. 444, 84 L.Ed. 604). However, this court has also observed that " 'any departure from the doctrine of *stare decisis* demands special justification.' " *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 120, 752 N.E.2d 962, quoting *Patterson v. McLean Credit Union* (1989), 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132. The majority offers no special justification for overruling the unanimous decision in *Brown*.

**{¶ 29}** The majority relies on the United States Supreme Court's holding in *New York v. Belton* (1981), 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768, as justification to overrule *Brown*. In *Belton*, the court discerned a need for a bright-line rule and held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Footnote omitted.) *Id*. at 460, 101 S.Ct. 2860, 69 L.Ed.2d 768. The court thereby concluded that such a search was reasonable under the Fourth Amendment.

**{¶ 30}** The *Belton* court derived its bright-line rule from its decision in *Chimel v. California* (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685. However, *Chimel* involved a search incident to an arrest in a residence, not an automobile. The *Chimel* court held that, in a residential setting, once an arrest is made, police officers may search the arrestee and the area within the arrestee's immediate control. *Id*. at 762-763, 89 S.Ct. 2034, 23 L.Ed.2d 685. The court concluded that a search of the immediate area after the arrest was justified " 'by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control.' " *Id*. at 764, 89 S.Ct. 2034, 23 L.Ed.2d 685. Thus, the justification for the search in *Chimel* was specifically based on well-established exceptions to the search warrant requirement of the Fourth Amendment, which are designed to protect the safety of the arresting officer and to prevent the destruction of crime evidence.

**{¶ 31}** In *Belton*, the United States Supreme Court sought to create a bright-line rule for the search of a motor vehicle by applying the rule in *Chimel*, allowing for a search of the area within the immediate reach of the arrestee, to the facts in *Belton*. Unfortunately, in applying *Chimel* to *Belton*, the court stretched the underlying justification supporting *Chimel* beyond its rationale.

**{¶ 32}** The Supreme Court applied the rationale of *Chimel* to a case where the occupants of a motor vehicle were ordered out of the car and arrested. When a police officer arrests a vehicle occupant, the arrestee is generally removed from the automobile. At that point, there is no longer any danger to the officer from anything in the passenger compartment of the vehicle and it is not possible for the arrestee to destroy evidence that may be in the vehicle. In *Brown*, we observed that the search of the passenger compartment of a vehicle after the occupant had already been arrested could not be justified by the same motivations as *Chimel* because "[t]he contents of the automobile were no longer within the arrestee's immediate control." *Brown*, 63 Ohio St.3d at 353, 588 N.E.2d 113.

**{¶ 33}** The majority concedes this point by stating that "only motor vehicles very recently occupied by those who have already been lawfully arrested are subject to a *Belton* search." The majority acknowledges that the occupant must first be removed from the automobile and placed under arrest before the police officer may search the automobile. Therefore, since the occupant is already under arrest and separated from the vehicle, the *Chimel* justifications for the search, *i.e.*, police officer safety and the protection of evidence, disappear.

**{¶ 34}** The absence of the *Chimel* justifications are apparent in the facts of *Belton*. In *Belton*, a police officer stopped a motor vehicle for speeding. The officer had probable cause to suspect that there was marijuana in the vehicle and therefore he ordered all four men out of the vehicle, placed them all under arrest, patted them down, and "split them up into four separate areas of the Thruway * * * so they would not be in physical touching area of each other." *Id*. at 456, 101 S.Ct. 2860, 69 L.Ed.2d 768. It was not until the police officer completed this procedure of securing the arrestees that he searched the passenger compartment of the vehicle. The facts clearly demonstrate that at the point of the vehicle search, the police officer was not in danger and any evidence in the vehicle was secure.

**{¶ 35}** The facts of both *Brown* and the case at bar illustrate the obvious absence of the *Chimel* justifications supporting the search of the passenger compartment of an automobile after the occupants have been arrested. In *Brown*, the police officer arrested the vehicle occupant and "placed him in custody in the patrol car" before searching the arrestee's automobile. *Brown*, 63 Ohio St.3d at 349, 588 N.E.2d 113. Similarly, in the case *sub judice* the majority acknowledges that the police officer "arrested appellant, handcuffed him, and placed him in the back seat of the police car." Only after Murrell was secured did the police officer proceed to search the appellant's vehicle.

**{¶ 36}** The majority states that the *Belton* court "reached a calculated conclusion that a search of the motor vehicle incident to arrest in this situation is a reasonable one, justified principally by concerns for officer safety and preserving evidence, and the advantages of having a bright-line rule in such situations."

**{¶ 37}** Since the traditional justifications of officer safety and preservation of evidence found in *Chimel* do not apply to *Belton*, and by extension do not apply to the case at bar, the only valid justification for the Supreme Court's holding in *Belton* is the need for a bright-line test.

**{¶ 38}** The *Belton* court stated that, without a bright-line rule, police officers would be overwhelmed in attempting to decide whether probable cause exists to search the passenger compartment of an automobile after the occupant is arrested. *Id*., 453 U.S. at 458, 101 S.Ct. 2860, 69 L.Ed.2d 768. In order to alleviate this supposed confusion, the court reasoned that " '[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.' " *Id*. at 461, 101 S.Ct. 2860, 69 L.Ed.2d 768, quoting *United States v. Robinson* (1973), 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427.

**{¶ 39}** There is nothing in the record before us to support a conclusion that since our decision in *Brown,* law enforcement officers have encountered particular

difficulty in knowing when to search the passenger compartment of a vehicle incident to an occupant's arrest.

{¶ 40} The majority, stating no special justification for adopting the *Belton* bright-line rule, contends that "[c]oncerns about a possible lack of probable cause to conduct a search in a *Belton* situation are eased by the fact that probable cause *must* have been present to arrest the occupant of the vehicle in the first place." (Emphasis *sic*.) In my view, we need a more persuasive reason to justify the automobile search.

{¶ 41} It is well settled that a state supreme court may interpret its state constitution to provide greater individual rights than those provided in the federal Constitution. *PruneYard Shopping Ctr. v. Robins* (1980), 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741. We did that in *Brown* when we unanimously held that the warrantless search of *Brown's* vehicle was unreasonable and violated Section 14, Article I of the Ohio Constitution.

{¶ 42} In the time since *Brown* was decided, nothing has changed to warrant the majority's sudden compulsion to overrule *Brown*. The only reason given by the majority to demonstrate that the time is now ripe to overrule *Brown* is this court's decision in *State v. Robinette* (1997), 80 Ohio St.3d 234, 685 N.E.2d 762. In *Robinette* we acknowledged the similarity in language between the Fourth Amendment and Section 14, Article I, and therefore indicated that the two should be harmonized. *Id*. at 766-767, 685 N.E.2d 762. However, as the majority correctly observes, "*Robinette* obviously left open the possibility that, depending on the circumstances, this court may decide to give independent effect to Section 14, Article I in the appropriate case." The case at bar is an appropriate case for this court to give independent effect to Section 14, Article I.

{¶ 43} In *Brown*, this court unanimously rejected *Belton* in stating that "[w]e do not believe that the certainty generated by a bright-line test justifies a rule that automatically allows police officers to search every nook and cranny of an

automobile just because the driver is arrested for a traffic violation." *Brown*, 63 Ohio St.3d at 352, 588 N.E.2d 113. Moreover, the facts in *Belton* were significantly different from those in *Brown* and the case at bar. In *Belton* the police officer had probable cause to search the vehicle after the arrest because the arrest was based on probable cause that there was marijuana *in the vehicle*. The vehicle search therefore flowed directly from the arrest.

{¶ 44} However, in *Brown*, the arrest was for driving under the influence of alcohol. The probable cause that the officer possessed to make the arrest had no connection to the contents of the vehicle. In the case at bar, the connection is even more difficult to make. Murrel was arrested for failure to pay child support. There was no connection between the reason for the arrest and the contents of the automobile.

{¶ 45} Because *Robinette* does not prevent this court from giving independent effect to Section 14, Article I, *Brown* should continue to control. Moreover, since the determinative facts here are closer to *Brown* than they are to *Belton*, we should follow our own jurisprudence as reflected in *Brown*.

{¶ 46} The unanimous opinion of this court in *Brown*, that the sole justification of the need for a bright-line rule is not enough to warrant "an extensive search based on facts that could never support a warrant because of the lack of probable cause," should not be altered. *Brown*, 63 Ohio St.3d at 352, 588 N.E.2d 113.

{¶ 47} I would reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

**PFEIFER, J., dissenting.**

{¶ 48} This court's holding in *State v. Brown* (1992), 63 Ohio St.3d 349, 588 N.E.2d 113, should control this case. The *Brown* opinion is measured and wise,

and allows for the search of the interior of an automobile incident to a driver's arrest when necessary. Under *Brown*, police officers can search an automobile if there is probable cause to suspect that the vehicle contains contraband, if there is a suspicious item in plain view, or if an officer is searching for weapons within the immediate control of the suspect. These are all reasonable exceptions to the Fourth Amendment prohibition against warrantless searches. The majority's holding today seems inclined to skirt the Fourth Amendment rather than work within it. I dissent and also join the dissent of Chief Justice Moyer.

————————————

*Michael K. Allen,* Hamilton County Prosecuting Attorney, and *Scott A. Rubenstein*, Assistant Prosecuting Attorney, for appellee.

*Arenstein & Gallagher* and *Hal R. Arenstein*, for appellant.

*Ron O'Brien*, Franklin County Prosecuting Attorney, and *Steven L. Taylor*, Assistant Prosecuting Attorney, urging affirmance for *amicus curiae* Ohio Prosecuting Attorneys Association.

*H. Fred Hoefle*, urging reversal for *amicus curiae* Greater Cincinnati Criminal Defense Lawyers Association.

*Kravitz & Kravitz* and *Max Kravitz*, urging reversal for *amicus curiae* Ohio Association of Criminal Defense Lawyers.

————————————