OPINION
Plaintiff-appellant the State of Ohio appeals from the trial court's decision granting defendant-appellee Roman Cordell Bozeman's motion to suppress evidence. The State argues that the warrantless search of the vehicle Bozeman was driving fits within the inventory search exception to the Fourth Amendment's warrant requirement because it is a standardized practice of the Dayton Police Department to impound and search a vehicle when a driver is arrested and the owner is not present.
We disagree and conclude that the vehicle's impoundment and subsequent inventory search were neither authorized nor justified under the inventory exception to the Fourth Amendment. The vehicle Bozeman was driving was unlawfully, impounded; therefore, the inventory search was improper. The impounding of the vehicle was not pursuant to an established written policy of the police department conducting the search. Although the State argues that police had discretion to impound vehicles in situations not covered by the written policy, reposing a decision whether to impound a vehicle to the unfettered discretion of a police officer does not constitute an established policy concerning the impoundment of motor vehicles sufficient to remove a search incident to an impoundment from the operation of the Fourth Amendment's restriction against unlawful searches and seizures. That being said, however, we conclude that the search of the vehicle was permissible under the Ohio Supreme Court's recent holding in State v. Murrell (2002),94 Ohio St.3d 489, syllabus.
Accordingly, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
 I
On September 27, 2001, Dayton police officer Shawn Emerson decided to conduct a traffic stop of Bozeman because some of his car's windows appeared to be tinted beyond the legal limit. Prior to the stop, Emerson discovered that the car was registered to a woman who lived on Cornell Woods. After Emerson activated his overhead lights, Bozeman did not immediately stop, but shortly, thereafter, parked in the driveway of a residence at 1543 Princeton Drive; he then exited the car.
Emerson proceeded to check the tinting on the windows and found that they were beyond the legal tinting limit. Bozeman was cited for the violation. Emerson, then, asked Bozeman for identification. Bozeman provided a state identification card, but had no valid driver's license. Emerson placed him under arrest for driving without a license. He told Bozeman that his car would be inventoried and towed because of the arrest. Bozeman requested that the car be left in the driveway, but Emerson declined.
During this time, Johnny Fisher, the owner of the residence at where the car was parked, also said the car could be left in his driveway. Instead of allowing the car to remain, Emerson searched the vehicle, leading to the discovery of seven clear bags of marijuana under the driver's seat. Emerson subsequently told Bozeman that he was also being charged with trafficking in marijuana.
Bozeman pled not guilty to the drug trafficking charge. He then filed a motion to suppress evidence of the marijuana and conversations stemming from the discovery of those drugs pursuant to his Fourth Amendment rights. After a hearing on the matter, the trial court granted his motion. From that decision, the State appeals.
 II
The State's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN SUPPRESSING EVIDENCE SEIZED DURING AN INVENTORY SEARCH OF THE CAR THAT BOZEMAN WAS DRIVING AT THE TIME OF HIS ARREST
When reviewing a trial court's decision on a motion to suppress, we must accept the trial court's factual findings so long as they are supported by competent and credible evidence. State v. Lander, (Nov. 24, 1999), Montgomery App. No. 17635, unreported (internal citations omitted). However, we review application of the law to the facts denovo. Id.
Dayton police may conduct valid inventory searches of impounded vehicles, without a warrant as generally required under the Fourth Amendment, provided that these searches are conducted in good faith and in accordance with reasonable, standardized procedures or established routines. State v. Hathman (1992), 65 Ohio St.3d 403, 404, paragraph one of the syllabus, citing South Dakota v. Opperman (1976), 428 U.S. 364,96 S.Ct. 3092, 49 L.Ed.2d 1000; Colorado v. Bertine (1987), 479 U.S. 367,107 S.Ct. 738, 93 L.Ed.2d 739; and Florida v. Wells (1990), 495 U.S. 1,110 S.Ct. 1632, 109 L.Ed.2d 1. The State bears the burden of establishing that a warrantless search is valid under one of the exceptions to the warrant requirement of the Fourth Amendment. Xenia v.Wallace (1988), 37 Ohio St.3d 216, 217, paragraph two of the syllabus.
The Dayton Police Department has implemented a written towing policy to determine when to impound and search a vehicle, which provides in relevant part as follows:
POLICY STATEMENT
 Removing motor vehicles obstructing roadways, involved in crimes, damaged in traffic accidents, or abandoned in streets, is a police function. Impounding these vehicles using tow trucks often inconveniences the owners, and can create an unfavorable view of the Police Department. Officers are to tow vehicles only when necessary.
WHEN TO TOW A VEHICLE
 A. Driver/Owner Arrested: Vehicle is obstructing traffic, illegally parked, vulnerable to theft, or is needed for evidence processing.
* * *
IV. PROPERTY INVENTORY OF A TOWED MOTOR VEHICLE
 A. Prior to towing any motor vehicle (excluding Abandoned Vehicles), conduct an inventory of the vehicle's contents and note the information on the KDT screen or complete a Tow-In Card F-472. A property inventory is an administrative, caretaking function, that itemizes and secures property in a seized or impounded vehicle. The United States Supreme Court has ruled that an inventory of a lawfully seized motor vehicle, conducted to safeguard property and not merely as a pretext to search without a warrant, is reasonable and does not violate Fourth Amendment Rights against illegal searches.
(Emphasis added.)
In the present case, the State argues that the trial court erred by granting Bozeman's motion to suppress evidence of drugs and statements obtained as a result of the inventory search of the car he was driving. The State contends that although Emerson's decision to tow Bozeman's car was not governed by Dayton's written towing policy, because Bozeman was not the owner of the car; in those instances where a driver being arrested is not the owner of a car, it is established practice for officers to exercise discretion in determining whether to have a vehicle impounded. Thus, Emerson was merely following the department's established routine, and the search was permissible under Hathman.
The central issue before us is whether Emerson's warrantless search of the vehicle violates the Fourth Amendment. If searching the car does not fall under some exception to the Fourth Amendment, then the trial court properly granted Bozeman's motion to suppress evidence obtained as the result of the unlawful search under the exclusionary rule. The State concedes that the impoundment was not permissible under the towing policy, but argues that although not a part of the written policy — the Dayton Police Department follows a standardized practice when determining whether to tow an automobile if the driver is not the owner of the vehicle. Accordingly, the search was lawful under the inventory exception to the Fourth Amendment.
We disagree with the State's reasoning for two reasons. First, Dayton's written policy provides the means by which officers may tow vehicles; we decline to read into the policy authority to impound a vehicle when the owner is not present that the policy specifically fails to provide for under its express terms in the case of an absent owner, when the policy appears to provide comprehensively for those cases in which impoundment is authorized, and the circumstances of this case are not covered in the policy. See State v. Clancy (Apr. 19, 2002), Montgomery App. No. 18844, unreported. Second, assuming that the Dayton police could legitimately have established practices regarding impoundment circumstances, not reflected within the written policy, under which impoundment of a vehicle would be authorized, the evidence in this case fails to demonstrate the existence of an established circumstance, outside the scope of the written tow policy, under which impoundment of a vehicle is authorized. As we have explained:
 A police officer's bare conclusory assertion that an inventory search was done pursuant to police department policy is not sufficient, standing alone, to meet the state's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement. Rather, the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy.
State v. Wilcoxson (July 25, 1997), Montgomery App. No. 15928, unreported.
In the case before us, the State has failed to put forth sufficient evidence of any standardized policy of the Dayton Police Department, other than the written policy, for impounding motor vehicles when the owner is not present and the driver has been arrested. Emerson's testimony regarding the alleged standardized policy or practice is as follows:
 Q [Prosecution]. That policy [Dayton Police Department's towing policy], those things — those things that are listed on there, are those — you have to strictly abide by those, those are the only time you can ever tow a car, or are you allowed to deviate from those at times?
A [Emerson]. No. The policy is a guide.
Q. It's a guide, meaning what?
 A. Like, in other words — you don't have to exactly follow that exactly, strictly is what I'm trying to say.
Q. Do you have any discretion?
A. Yes.
 Q. Okay. So there are times when you have to exercise your own discretion in situations that may not be addressed in that policy?
A. Correct.
 Q. Okay. And the question that I had asked before is: Does it specifically in that first section — I believe is it maybe Section A?
A. 1-A, the one I ready previously.
 Q. Yes. In section 1, in there does it specifically, in specific terms, state a policy for a situation where someone other than the owner of the car is driving the car, is pulled over, and arrested? Does it give you a specific policy that you have to follow in that specific situation?
A. No.
 Q. So in that case, would you maybe have to use your discretion?
A. Yes.
Q. And is that what you did in this case?
A. Yes.
Put simply, Emerson's testimony that Dayton's policy, regarding whether to impound a car when the driver is arrested and not the registered owner, is wholly discretionary presents us with no real policy at all. He points to no factors that police are required to consider in exercising their use of discretion. He has therefore failed to demonstrate that the requirements of the policy are consistently followed, so as to assure that impoundments are not being used as a mere pretext to search. Despite the State's argument to the contrary, we cannot conclude that a wholly discretionary determination by police whether to impound a vehicle confined to the unfettered discretion of a police officer constitutes a standardized, routine policy or practice, that takes their actions outside of the warrant requirements of the Fourth Amendment. But see, State v. Semenchuk (1997), 122 Ohio App.3d 30,40 (finding discretionary determination by officer of whether or not to release a vehicle to someone other than a driver to be a standardized practice).
Under the Ohio Supreme Court's recent holding in Murrell, supra, however, the search was still permissible as a contemporaneous search incident to a lawful custodial arrest. In Murrell, an individual was stopped for a speeding violation. After running a check on Murrell's license, the officer discovered there was an outstanding warrant for his arrest for failure to pay child support. Murrell was arrested, handcuffed, and placed in the back seat of the police car. The officer then searched his car — although he never felt that he was in danger during the stop, failed to request Murrell's permission prior to searching the car, and would not otherwise have impounded the vehicle — and found a small cloth bag containing crack cocaine and powdered cocaine. Murrell was subsequently also arrested for drug possession. He moved to suppress the evidence, which the Ohio Supreme Court ultimately denied for the following reason:
 When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.
 Murrell, supra. Like Murrell, Bozeman was stopped for a lawful purpose and arrested. Because Emerson had made a lawful custodial arrest, he was permitted, under Murrell, to search the automobile incident to the arrest.
We conclude that although the State failed to meet its burden of demonstrating that a lawful impoundment and inventory search was conducted in accordance with the Dayton Police Department's established routines or standardized policies; the search was nonetheless permissible under Murrell. Therefore, the evidence found in the vehicle was not the product of an unauthorized search. The evidence found and any statements made were incorrectly suppressed. Accordingly, the State's sole assignment of error is sustained, and the judgment of the trial court is reversed.
 III
The State's sole assignment of error having been sustained, the judgment of the trial court is Reversed, and this cause is Remanded for further proceedings consistent with this opinion.
GRADY and YOUNG, JJ., concur.