OPINION
{¶ 1} Plaintiff-appellant State of Ohio appeals from a decision of the Montgomery County Court of Common Pleas granting defendant-appellee DeAngelo G. Fisher's motion to suppress filed on June 13, 2005. A hearing was held on said motion on July 21, 2005, and on August 1, 2005, the trial court issued a written decision sustaining the motion. For the following reasons, the judgment of the trial court will be reversed.
 I {¶ 2} While on patrol in the early morning hours of April 2, 2005, Dayton Police Officers Stephen Clark and Timothy Pauley observed a Chevy van complete a right-hand turn without signaling. The officers initiated a traffic stop and approached the vehicle. At the suppression hearing, Officer Clark testified that as he and Officer Pauley approached the van, they observed the driver, who was later identified as Fisher, adjust the vehicle's mirrors and lean out of the driver's side window. Officer Clark testified that Fisher's actions appeared "odd." In the meantime, Dayton Police Officer Zimmerman arrived as back-up to assist Officers Clark and Pauley.
 {¶ 3} After speaking with Fisher who was unable to produce a driver's license, the officers removed him from the vehicle and placed him in the back of Officer Clark's cruiser. Officer Pauley remained in the cruiser with Fisher and ran a computer search based upon personal information provided by Fisher. Apparently based on Fisher's "odd" behavior during the initial stop, Officer Clark returned to the van and performed a search of the lunge area around the driver's seat. In the console between the front seats, Officer Clark discovered a loaded .32 caliber derringer-style handgun. Upon returning to the cruiser to question Fisher about the handgun, Officer Pauley informed Officer Clark that Fisher had an outstanding arrest warrant for no driver's license.
 {¶ 4} Fisher was arrested on the warrant and was questioned by Officer Clark about the ownership of the handgun. Fisher explained that the handgun was his and had been given to him by his girlfriend for protection. Fisher was then transported to the police station where he spoke to Detective Kevin Bollinger about the handgun and also provided a written statement. Fisher's van was towed after the remaining police officers performed an inventory search of it prior to impound.
 {¶ 5} On April 27, 2005, Fisher was indicted for having weapons while under disability, in violation R.C. §2923.13(A)(2), and for carrying a concealed weapon, in violation of R.C. § 2923.12(A)(2).
 {¶ 6} In the instant appeal, the State argues that the trial court erred when it sustained Fisher's motion to suppress any physical evidence retrieved from the vehicle as well as any statements he made pertaining to the handgun seized during the search. Pursuant to the doctrine of inevitable discovery, the State asserts that the trial court was incorrect when it held that the handgun retrieved from Fisher's van should be suppressed.
 {¶ 7} The State filed notice of appeal on September 22, 2005.
 II {¶ 8} The State of Ohio sole assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED WHEN IT SUPPRESSED THE GUN FOUND IN THE CENTER CONSOLE OF THE VAN WHEN THE EVIDENCE SHOWED THAT THE OFFICERS WOULD HAVE INEVITABLY DISCOVERED THE GUN THROUGH LAWFUL MEANS ONLY MOMENTS LATER."
 {¶ 10} In its sole assignment, the State contends that the seizure of the handgun was lawful, and it was error for the trial court not to consider this argument when it suppressed said evidence as well as the verbal statements made by Fisher to the police officers. At the suppression hearing, the State unsuccessfully argued that the warrantless search of the van was excepted from the exclusionary rule because it was incident to Fisher's arrest. Alternatively, the State asserts that although the initial search of the lunge area performed by Officer Clark was not justified in light of Fisher's behavior upon being stopped, the officers would have inevitably discovered the handgun when they performed the inventory search of the vehicle prior to towing it.
 {¶ 11} With respect to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Hopfer (1996), 112 Ohio App.3d 521, 548,679 N.E.2d 321, quoting State v. Venham (1994),96 Ohio App.3d 649, 653, 645 N.E.2d 831. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. State v. Isaac
(July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing State v. Retherford (1994), 93 Ohio App.3d 586,639 N.E.2d 498. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 12} "When a police officer has made a lawful custodial arrest of the occupant of an automobile, the officer may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." State v. Murrell (2002),94 Ohio St.3d 489, 764 N.E.2d 986, 2002-Ohio-1483, syllabus.
 {¶ 13} "The doctrine of inevitable discovery is a corollary of the independent source exception to the exclusionary rule which holds that evidence will not be suppressed if the state learns of the questioned evidence from a source separate and distinct from an illegal source." Wong Sun v. United States
(1963), 371 U.S. 471, 487-488, 83 S.Ct. 407. The inevitable discovery rule states that illegally obtained evidence is properly admitted in trial court proceedings once it is established that the evidence in question would have been ultimately or inevitably discovered during the course of a lawful investigation. State v. Perkins (1985), 18 Ohio St.3d 193,480 N.E.2d 763.
 {¶ 14} Testimony was adduced at the suppression hearing that it was the Dayton Police policy to conduct an inventory search prior to the impoundment of vehicles belonging to persons who have been arrested. This practice was evidenced by the following exchange between the prosecutor and Officer Clark:
 {¶ 15} "Q: Now, what was going to happen to the van that the defendant had been driving now that you knew he was going to be placed under arrest?"
 {¶ 16} "A: Once we determined he was under arrest, the van was what we call a search inventory to arrest. We did check the vehicle for any other items in the vehicle and listed property which was in the vehicle and the van was towed."
 {¶ 17} The "inventory exception" to the warrant requirement of the Fourth Amendment permits the police to conduct a warrantless search to produce an inventory of the contents of an impounded vehicle. See South Dakota v. Opperman (1976),428 U.S. 364, 376, 96 S.Ct. 3092, 3100; State v. Mesa (1999),87 Ohio St.3d 105, 108-109, 717 N.E.2d 329, 332, 333. The rationale for excluding inventory searches from the warrant requirement is that inventory searches are an administrative or caretaking function, rather than an investigative function. Opperman,
supra, 428 U.S. at 370.
 {¶ 18} In State v. Bozeman (May 24, 2002), Montgomery App. No. 19155, 2002-Ohio-2588, we held that "a police officer's bare conclusory assertion that an inventory search was done pursuant to a police department's policy is not sufficient, standing alone, to meet the state's burden of proving that a warrantless search was reasonable because it fits within the inventory search exception to the warrant requirement. Rather, the evidence presented must demonstrate that the police department has a standardized, routine policy, demonstrate what that policy is, and show how the officer's conduct conformed to that standardized policy." See State v. Wilcoxson (July 25, 1997), Montgomery App. No. 15928. It is clear from the transcript of the suppression hearing that no such foundation was laid that demonstrates a routine, standardized policy existed for the inventory search of Fisher's vehicle. Other than the testimony of Officer Clark, the evidence is insufficient to prove that the warrantless search was reasonable under these circumstances.
 {¶ 19} However, in light of the holding in Murrell, supra, the search was still permissible as a contemporaneous search incident to a lawful custodial arrest. Officer Clark testified that even though he discovered the handgun in Fisher's van prior to his arrest, he did not question Fisher about the weapon until after he became aware of the outstanding warrant for no driver's license. In fact, Officer Clark stated that Officer Pauley informed him of the warrant, and then he arrested Fisher andMirandized him before questioning him about the handgun. UnderMurrell, the officers had the authority to search Fisher's van once he was under arrest, and the handgun would have inevitably been discovered.
 {¶ 20} In the instant case, it is undisputed that the initial search of the lunge area by Officer Clark was unlawful. However, once the officers became aware of the outstanding warrant on Fisher for no driver's license and arrested him, they would be clearly within the bounds of the law to perform a search of the van prior to it being impounded. Incidental to Fisher's lawful arrest on a warrant, it was inevitable that the police would have discovered the handgun between the front seats in the van. Thus, the trial court erred in ruling that the handgun was inadmissible.
 {¶ 21} Lastly, it is clear from the testimony adduced during the suppression hearing that Fisher was properly Mirandized by Officer Clark and Detective Bollinger prior to making incriminating statements regarding his possession and ownership of the handgun. Therefore, Fisher's statements, as well as the handgun, are admissible.
 III {¶ 22} After an independent review of the law as applied to the facts of this case, we find that the trial court's decision to grant Myrick's motion to suppress is not supported by competent and credible evidence. The judgment of the trial court is reversed, and the cause is remanded for proceedings consistent with this opinion.
Grady, P.J. and Wolff, J., concur.