# FLORIDA v. THOMAS

No. 00–391.  Argued April 25, 2001—Decided June 4, 2001

*Robert J. Krauss,* Senior Assistant Attorney General of Florida, argued the cause for petitioner. With him on the briefs were *Robert A. Butterworth,* Attorney General, *Carolyn M. Snurkowski,* Assistant Deputy Attorney General, and *John M. Klawikofsky,* Assistant Attorney General.

*Gregory G. Garre* argued the cause for the United States as *amicus curiae* urging reversal. With him on the brief were *Acting Solicitor General Underwood, Acting Assistant Attorney General Keeney,* and *Deputy Solicitor General Dreeben.*

*Cynthia J. Dodge* argued the cause for respondent. With her on the brief was *James Marion Moorman.**

---

*Tracey Maclin* and *Lisa B. Kemler* filed a brief for the National Association of Criminal Defense Lawyers as *amicus curiae* urging affirmance.

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

In *New York* v. *Belton,* 453 U. S. 454 (1981), we established a "bright-line" rule permitting a law enforcement officer who has made a lawful custodial arrest of the occupant of a car to search the passenger compartment of that car as a contemporaneous incident of the arrest. We granted certiorari to consider whether that rule is limited to situations in which the officer initiates contact with the occupant of a vehicle while that person remains inside the vehicle. 531 U. S. 1069 (2001). We find, however, that we lack jurisdiction to decide the question.

On the evening at issue, officers were present at a home in Polk County, Florida, investigating the sale of marijuana and making arrests. Respondent Robert Thomas drove up to the residence, parked in the driveway, and walked toward the back of his vehicle. Officer J. D. Maney met Thomas at the rear of Thomas' vehicle, and asked him his name and whether he had a driver's license. After a check of Thomas' license revealed an outstanding warrant for his arrest, Officer Maney arrested him, handcuffed him, and took him inside the residence. The officer then went back outside, alone, and searched Thomas' car. The search revealed several small bags containing a white substance that tested positive for methamphetamine.

Respondent was charged with possession of methamphetamine and related narcotics offenses. The trial court granted his motion to suppress the evidence of narcotics and narcotic paraphernalia. The Second District Court of Appeal reversed, 711 So. 2d 1241 (1998), finding the search valid under *New York* v. *Belton, supra.* The Supreme Court of Florida in turn reversed, holding that *Belton* did not apply. The court held that *"Belton's* bright-line rule is limited to situations where the law enforcement officer initiates contact with the defendant" while the defendant remains in the car. 761 So. 2d 1010, 1014 (2000). The court concluded

that *Belton* was inapplicable, and directed that the trial court determine "whether the factors in *Chimel* [v. *California*, 395 U. S. 752 (1969),] justify the search of Thomas' vehicle." 761 So. 2d, at 1014. The court explained that "[b]ased on the record . . . we are unable to ascertain whether [the officer's] safety was endangered or whether the preservation of the evidence was in jeopardy," as necessary to justify the search under *Chimel* v. *California,* 395 U. S. 752 (1969), and remanded for further proceedings.

Although the parties did not raise the issue in their briefs on the merits, we must first consider whether we have jurisdiction to decide this case. See *Duquesne Light Co.* v. *Barasch,* 488 U. S. 299, 306 (1989). Title 28 U. S. C. § 1257(a) authorizes this Court to review "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had . . . where any title, right, privilege, or immunity is specially set up or claimed under the Constitution." In a criminal prosecution, finality generally "is defined by a judgment of conviction and the imposition of a sentence." *Fort Wayne Books, Inc.* v. *Indiana,* 489 U. S. 46, 54 (1989). But we have not, in practice, interpreted the finality rule so strictly. In certain circumstances, we have "treated state-court judgments as final for jurisdictional purposes although there were further proceedings to take place in the state court." *Flynt* v. *Ohio,* 451 U. S. 619, 620–621 (1981) *(per curiam).* In *Cox Broadcasting Corp.* v. *Cohn,* 420 U. S. 469 (1975), we divided cases of this kind into four categories. None fits the judgment of the Florida Supreme Court, however, and we therefore conclude that its judgment is not final.

The first *Cox* category includes those cases in which "there are further proceedings—even entire trials—yet to occur in the state courts but where for one reason or another the federal issue is conclusive or the outcome of further proceedings preordained." *Id.,* at 479. The prototypical example of this category is *Mills* v. *Alabama,* 384 U. S. 214 (1966). There the Supreme Court of Alabama held that a statute

which prohibited the publication of an editorial endorsement on election day did not violate the First Amendment, and remanded the case for trial. *Id.*, at 216–217. Mills conceded that his only defense to the state charge was his constitutional claim; he admitted that he did publish the editorial. We held that this was a "final judgment" and took jurisdiction, saying that a trial "would be no more than a few formal gestures leading inexorably towards a conviction, and then another appeal to the Alabama Supreme Court for it formally to repeat its rejection of Mills' constitutional contentions whereupon the case could then once more wind its weary way back to us as a judgment unquestionably final and appealable. Such a roundabout process would not only be an inexcusable delay of the benefits Congress intended to grant by providing for appeal to this Court, but it would also result in a completely unnecessary waste of time and energy in judicial systems already troubled by delays due to congested dockets." *Id.*, at 217–218.

The decision of the Supreme Court of Florida here differs considerably from that of the state court in *Mills*. The Florida Supreme Court remanded the case not only for application of *Chimel*, but for further factfinding, and the State has not conceded that the search is invalid under *Chimel*.

In *Cox*'s second category are those cases in which "the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings." 420 U. S., at 480. In *Cox* we used our decision in *Radio Station WOW, Inc.* v. *Johnson*, 326 U. S. 120 (1945), to illustrate the second category. We said:

> "In *Radio Station WOW*, the Nebraska Supreme Court directed the transfer of the properties of a federally licensed radio station and ordered an accounting, rejecting the claim that the transfer order would interfere with the federal license. . . . Nothing that could happen

in the course of the accounting, short of settlement of the case, would foreclose or make unnecessary decision on the federal question." *Cox, supra,* at 480.

In this case, however, were the Florida courts to find that *Chimel* allows the search, a decision on the *Belton* issue would no longer be necessary. We have also noted that we treat state-court judgments in this category as final on the assumption that "'the federal questions that could come here have been adjudicated by the State court,'" and the state proceedings to take place on remand "'could not remotely give rise to a federal question . . . that may later come here.'" *Cox,* 420 U. S., at 480. We cannot make that assumption in this case.

Cases where "the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case," fall into *Cox*'s third category. *Id.,* at 481. *New York* v. *Quarles,* 467 U. S. 649 (1984), is such a case. Respondent was charged in state court with criminal possession of a weapon, and certain evidence was suppressed on federal constitutional grounds. We granted the petition for certiorari and reversed, explaining that the suppression ruling was a "final judgment" although respondent had yet to be tried. *Id.,* at 651. We said that this case fell within *Cox*'s third category because "should the State convict respondent at trial, its claim that certain evidence was wrongfully suppressed will be moot. Should respondent be acquitted at trial, the State will be precluded from pressing its federal claim again on appeal." 467 U. S., at 651, and n. 1.

To deny review here would not necessarily cause Florida to go to trial without the suppressed evidence, with further appeal barred in the event of an acquittal or the federal claim mooted in the event of a conviction. The state court has

yet to decide whether the evidence should be suppressed; that will be resolved on remand. If the State prevails on remand and the evidence is admitted under *Chimel,* then the *Belton* issue will be moot, and the State cannot seek review of it. But if the State loses, and the evidence is suppressed, Florida law allows the State to appeal, as long as it does so prior to trial. Fla. Stat. §924.071(1) (1996) ("The state may appeal from a pretrial order . . . suppressing evidence"); Fla. Rule App. Proc. 9.140(c)(1)(B) (2001) ("The state may appeal an order . . . suppressing before trial . . . evidence obtained by search and seizure"). Should the Supreme Court of Florida rule against the State on the *Chimel* issue, the question of suppression would be finally decided by the Florida courts, and the State could then seek certiorari in this Court. At that time it could obtain review of both the *Belton* issue and the *Chimel* issue. See *Jefferson* v. *City of Tarrant,* 522 U. S. 75, 83 (1997).

The fourth *Cox* category includes those cases where "the federal issue has been finally decided in the state courts with further proceedings pending in which the party seeking review here might prevail on the merits on nonfederal grounds, thus rendering unnecessary review of the federal issue by this Court, and where reversal of the state court on the federal issue would be preclusive of any further litigation on the relevant cause of action rather than merely controlling the nature and character of, or determining the admissibility of evidence in, the state proceedings still to come. In these circumstances, if a refusal immediately to review the state-court decision might seriously erode federal policy, the Court has entertained and decided the federal issue, which itself has been finally determined by the state courts for purposes of the state litigation." 420 U. S., at 482–483.

Here the State can make no claim of serious erosion of federal policy that is not common to all run-of-the-mine decisions suppressing evidence in criminal trials. The fourth *Cox* exception does not apply here.

For the foregoing reasons, we dismiss the writ of certiorari for want of jurisdiction.

*It is so ordered.*