**FOLKSAMERICA REINSURANCE COMPANY as successor in interest to Christiana General Insurance Company of New York, Plaintiff,**

v.

**CLEAN WATER OF NEW YORK, INC., Defendant.**

No. 02–CV–3584.

United States District Court, E.D. New York.

Aug. 14, 2003.

James E. Mercante, Rubin, Fiorella & Friedman, LLP, New York City, for Plaintiff.

Cornelius A. Mahoney, Mahoney & Keane, LLP, New York City, For Defendant.

### *MEMORANDUM & ORDER*

BLOCK, District Judge.

Plaintiff Folksamerica Reinsurance Company, as successor in interest to Christiana General Insurance Company of New York ("Christiana"), seeks a declaration that it has no obligation to defend or indemnify its insured, defendant Clean Water of New York, Inc. ("Clean Water"), with respect to a pending personal injury lawsuit brought against Clean Water in a New York state court. Both parties have moved for summary judgment. In addition, Clean Water has moved to dismiss on jurisdictional grounds, arguing that be-

cause the insurance policy at issue is not a "maritime" contract, the Court lacks admiralty jurisdiction. The parties agree that because they do not enjoy diversity of citizenship and no federal question is presented, admiralty jurisdiction is the only possible basis upon which the Court may entertain this action.

Addressing the jurisdictional issue first, as it must, *see Florida v. Thomas,* 532 U.S. 774, 777, 121 S.Ct. 1905, 150 L.Ed.2d 1 (2001) (court "must first consider whether [it has] jurisdiction to decide this case"), the Court concludes that it lacks subject matter jurisdiction; consequently, it must dismiss the complaint.

### BACKGROUND

The relevant facts are drawn from the parties' Local Rule 56.1 statements and are not disputed. Clean Water performs tank cleaning operations on ocean-going and other vessels. Sometime prior to August 12, 1994, it contracted with the owners of Barge S.T. 85, an ocean-going vessel, to clean the barge's oil tanks. Clean Water later entered into an agreement with Union Maintenance Corporation whereby the latter supplied workers to clean these tanks. On August 12, 1994, while the barge was moored at a facility in Kill Van Kull, a navigable waterway within New York Harbor, Milton Rivera ("Rivera") was injured while cleaning one of the tanks.

Rivera brought suit against Clean Water in the Civil Court of New York, Kings County, principally alleging negligence. Clean Water was a named insured under Comprehensive General Liability Policy No. TRS—892050 issued by Christiana ("the Policy").[1] Clean Water notified

---

**1.** Eklof Marine Corporation, Clean Water's corporate parent, is the first of the Policy's several "named insureds." Allegedly owing to a mutual mistake, the Policy did not list Clean Water as a named insured. The parties have agreed that it should be so treated for purposes of the subject motions. Additional named insureds include Ecklof Transportation Company, South Bay Fuel Transporta-

Christiana's agent of the Rivera suit and sought defense and indemnification under the Policy.

The Policy promises to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury [or] (B) property damage to which this insurance applies caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage[.]" Joint Exhibit 1, at 7. The Policy contains two sections: "Section I, Comprehensive General Liability," which provides comprehensive general liability insurance, and "Section II, Shiprepairers Legal Liability," which provides coverage for property damage to vessels being repaired by the insured. *Id.*, at 11, 49–50. It has a "Gulf of Mexico Extension" that extends coverage to named insureds' operations in the Gulf of Mexico. Because the Shiprepairers Legal Liability section applies only to property damage claims, and the Rivera action involves only personal injury, Clean Water has not sought coverage under Section II of the Policy.

Christiana denied Clean Water's claim for coverage, asserting that Clean Water had made material misrepresentations and omissions when it applied for the insurance, and that certain exclusions within the Policy barred coverage. Christiana then filed this action, seeking a declaration that it was not obligated under the Policy to defend or indemnify Clean Water with respect to the Rivera action.

## DISCUSSION

■ Observing that Rivera's accident occurred on board an ocean-going vessel docked in navigable waters, that Clean Water is in the business of cleaning ships, that the Policy was issued to Eklof

Marine, a marine transporter of oil products by sea, that a number of named insureds under the Policy engage in maritime commerce, that it was issued through a general agent specializing in marine insurance, and that it contains a "Gulf of Mexico Extension," Christiana argues that the Court possess admiralty jurisdiction over this declaratory judgment action. Focusing primarily on facts surrounding Rivera's accident and the issuance of the Policy, rather than on the Policy itself, Christiana's argument misses the mark.

■ "The general rule is that admiralty jurisdiction arises only when the subject matter of the contract is 'purely' or 'wholly' maritime in nature." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 109 (2d Cir. 1997) (citing *Rea v. The Eclipse*, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890)). As to the meaning of "maritime," one treatise notes that

> Maritime character of the nature to attract admiralty jurisdiction does not attach to a contract merely because the services to be performed under the contract have reference to a ship, or to its business, or that the ship is the object of such services or that it has reference to navigable waters. In order that such character attach, there must be present a direct and proximate judicial link between the contract and the operation of the ship, its navigation or its management afloat[.]

1 E. Jhirah, A. Sann, B. Chase & M. Chynsky, Benedict on Admiralty § 182, at 11–7 (7th ed.1985). *See also CTI–Container Leasing Corp. v. Oceanic Operations Corp.*, 682 F.2d 377 (2d Cir.1982) (noting "[t]he definitions have proved easier to state than to apply," and citing a number

of "seemingly incompatible results" that "abound"). In making its jurisdictional determination, the Court must be mindful of the underlying purpose of the grant of admiralty jurisdiction: "the protection of marine commerce." *Exxon Corp. v. Central Gulf Lines,* 500 U.S. 603, 608, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991).

Section I of the Policy has provisions relating to fire risks, medical malpractice risks, advertising risks, and liability for liquor-related injuries, and excludes coverage for damages arising from such things as snowmobile use, the unloading of aircraft, certain automobile use, and worker's compensation liability. It is a standard comprehensive general liability policy of the type used by many businesses to cover a variety of losses which may arise in day-to-day general operations. The kind of insurance provided by Section I has little to do with the three traditional forms of marine insurance—hull insurance, cargo insurance, and protection and indemnity insurance. *See* T.J. Shoenbaum, *Admiralty and Maritime Law,* § 18–1 (West 1987) (identifying the "three principal different categories of marine insurance policies"); *see also North American Specialty Ins. Co. v. Bader,* 58 F.Supp.2d 493, 497 (D.N.J.1999) ("Marine insurance is insurance with a subject matter specifically related to the hazards encountered in maritime transportation."). Hull insurance "is taken by the shipowner to insure the vessel and its equipment on a time basis"; cargo insurance "is taken by the person at risk, usually the shipper, to cover specific movement of cargo"; and protection and indemnity insurance "is taken by the shipowner, charterer or other person in similar position to insure against third party and other liabilities[.]" Shoenbaum, § 18–1.

Comparison to the three traditional forms of marine insurance underscores Section I's non-maritime nature. *See Exxon Corp.,* 500 U.S. at 612, 111 S.Ct. 2071 (noting that Supreme Court precedent

"analogiz[es] the substance of the contract at issue to established types of 'maritime' obligations"). The most analogous of the three, protection and indemnity insurance, addresses losses such as those arising from the injury or death of seamen and passengers, unemployment caused by shipwreck, diversion expenses, stowaway and refugee liability, collision with other ships, quarantine expenses, and towage liability. *See generally Benedict on Admiralty,* Marine Insurance: Protection and Indemnity Club Rules [and] Institute Clauses, Vol. 7A (Matthew Bender 2002). These are not the types of risks that Section I addresses.

Despite a diligent search, the Court has been unable to locate any reported decision addressing whether a comprehensive general liability policy is a marine insurance contract. In the Court's view, Section I of the Policy simply lacks the "genuinely salty flavor" necessary to constitute a maritime contract. *Ocean Science & Engineering, Inc. v. International Geomarine Corp.,* 312 F.Supp. 825, 828 (D.Del. 1970) (citing *Kossick v. United Fruit Co.,* 365 U.S. 731, 742, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961)). The Court concludes that Section I of the Policy does not constitute "marine insurance."

■ Although Section II of the Policy appears to be maritime in nature (an issue which the Court need not decide), the Policy as a whole is not "purely" or "wholly" a marine contract given Section I's non-maritime character. "[W]here a contract contains both maritime and non-maritime obligations, admiralty jurisdiction is generally denied." *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196, 199 (2d Cir.1992). There are two exceptions. The first arises "where the non-maritime elements are merely 'incidental' in an otherwise maritime contract"; in such a case, "admiralty jurisdiction will encompass the entire contract." *Id. See also Sirius Ins.*

**534**

Co. v. Collins., 16 F.3d 34, 37 (2d Cir.1994) (referring to the policy in *Atlantic Mutual Ins. Co.* as "neither purely maritime nor even primarily maritime" because one part of the policy was "designed to cover maritime transportation, [while] other portions, with separately calculated premiums, covered the coffee during inland transportation, storage, and milling."). This exception is inapplicable because coverage under Section I can hardly be considered incidental to the Policy as a whole.

The second exception is that "in a contract containing both maritime and non-maritime elements, *a claim under a maritime portion of a contract* will sustain admiralty jurisdiction where the maritime obligations can be 'separately enforced without prejudice to the rest.'" *Atlantic Mutual Ins. Co.*, 968 F.2d at 199 (citing *Compagnie Francaise De Navigation a Vapeur v. Bonnasse*, 19 F.2d 777, 779 (2d Cir.1927)) (emphasis added). This exception does not apply because the claim at issue does not arise under the maritime portion of the Policy; Clean Water is not seeking coverage under Section II.

Because neither exception applies, the Court is bound by the general rule that mixed maritime and non-maritime contracts cannot form the basis for admiralty jurisdiction.

### CONCLUSION

The complaint is dismissed for lack of subject matter jurisdiction.

**SO ORDERED.**