Affirmed by Supreme Court, May 24, 2004

Petition for cert granted by S. Ct.
order filed 11/3/03.

PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                                    No. 02-4382

MARCUS THORNTON,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Rebecca Beach Smith, District Judge.
(CR-01-235)

Argued: February 24, 2003

Decided: April 3, 2003

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in
which Judge Widener and Judge Williams joined.

## COUNSEL

**ARGUED:** Walter Bruce Dalton, Assistant Federal Public Defender,
Norfolk, Virginia, for Appellant. Laura Marie Everhart, Assistant
United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:**
Frank W. Dunham, Jr., Federal Public Defender, Norfolk, Virginia,
for Appellant. Paul J. McNulty, United States Attorney, Norfolk, Vir-
ginia, for Appellee.

# OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

A jury convicted Marcus Thornton of possession with intent to distribute cocaine base and two firearm offenses. On appeal, he challenges only the district court's refusal to suppress a firearm found in his automobile, maintaining that it was not legally obtained pursuant to a "search incident to arrest." For the reasons that follow, we affirm.

## I.

At a pretrial suppression hearing, the parties produced the following evidence.

On July 21, 2001, Officer Deion L. Nichols, of the Norfolk, Virginia Police Department, driving in an unmarked police cruiser, observed a gold Lincoln Town Car pull to his left that "wouldn't come all the way up to [him]." Assuming that the driver of the Lincoln suspected that he was a police officer, Officer Nichols pulled over to a side street and made a right turn. After the Lincoln passed him, Officer Nichols ran a check on the tags. The check revealed that the tags had been issued to a 1982 Chevy two-door car rather than a Lincoln Town Car. Officer Nichols followed the Lincoln, intending to pull it over. The Lincoln was driven into a parking lot, however, before Officer Nichols "had a chance to do so." Thornton parked the Lincoln and exited the vehicle. Officer Nichols "pulled in behind him and exited [his] vehicle." Officer Nichols, who was in uniform, then approached Thornton, asked him for his driver's license, and told him that his tags did not match the registered vehicle.

Thornton "appeared nervous" and "right away started rambling," "licking his lips," and "sweating." He told Officer Nichols that "someone had just given him the car." "For officer safety," Officer Nichols asked Thornton if he had any narcotics or weapons on him. Thornton said no. The officer then asked him if there were any weapons or narcotics in the car. Thornton again said no. Officer Nichols, "again for officer safety," patted Thornton down, after asking if he could do so. Officer Nichols felt a "bulge" in Thornton's front left pocket. The

officer "didn't know what it was, so [he] just kind of casually asked Thornton, `Do you have any illegal narcotics on you?'" Thornton said that he had "a bag of weed." Officer Nichols then asked him if he could have the bag. Thornton "reached into his pocket" and "pulled out two individual bags," one containing three bags of a "green leafy material consistent with marijuana" and the other with a "large amount of an off-white rocklike substance consistent with crack cocaine."

At that point, Officer Nichols handcuffed Thornton and advised him that he was under arrest. (At trial, Officer Nichols testified that he immediately thereafter put Thornton in the back of the patrol car.) Then, "[i]ncident to that arrest," the officer searched the vehicle and found a "BryCo .9-millimeter handgun" under the front driver's seat, where he had observed Thornton sitting. On the way to the police station, Thornton told Officer Nichols, "without any provocation," that he had "just robbed some cat out at Ocean View, and that's where he got the dope."

On December 12, 2001, a grand jury charged Thornton with possession with intent to distribute cocaine base, in violation of 21 U.S.C.A. § 841(a)(1) (West 1999), possession of a firearm after having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, in violation of 18 U.S.C.A. § 922(g)(1) (West 2000), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c)(1) (West 2000).

Thornton moved to suppress the drugs, his statement, and the firearm on various grounds. After a hearing, the district court denied the motion, finding, *inter alia*, that Officer Nichols lawfully searched Thornton's automobile incident to his arrest and, alternatively, that Officer Nichols could have conducted an inventory search of the automobile.

On February 8, 2002, a jury convicted Thornton on all three counts. Thornton moved for a new trial, again arguing that the automobile search was unlawful. The district court denied the motion based on the earlier suppression ruling. On May 3, 2002, the district court sentenced Thornton to 180 months imprisonment and eight years of

3

supervised release. Thornton appeals, challenging only the district court's refusal to suppress the firearm; he does not challenge the refusal to suppress the drugs or his statement.

## II.

In reviewing the district court's denial of a motion to suppress evidence, we review legal conclusions *de novo* and factual findings for clear error. *See United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002).

Thornton's sole contention on appeal is that the search incident to arrest doctrine, as applied to searches of automobiles in *New York v. Belton*, 453 U.S. 454 (1981), required Officer Nichols to "initiate . . . contact with Thornton, either by actually confronting Thornton, or signaling confrontation with Thornton, while Thornton was still in his vehicle."

## A.

It is a well-settled "first principle of Fourth Amendment jurisprudence that the police may not conduct a search unless they first convince a neutral magistrate that there is probable cause to do so." *Belton*, 453 U.S. at 457. In *Chimel v. California*, 395 U.S. 752 (1969), the Court discussed the rationale for and limitations of the "search incident to arrest" exception to that warrant requirement:

> When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting offi-

4

> cer as one concealed in the clothing of the person arrested.
> There is ample justification, therefore, for a search of the
> arrestee's person and the area "within his immediate con-
> trol" — construing that phrase to mean the area from within
> which he might gain possession of a weapon or destructible
> evidence.

*Chimel*, 395 U.S. at 762-63. The Court has often reiterated the "two historical rationales for the `search incident to arrest' exception: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial." *Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (citing, *inter alia*, *United States v. Robinson*, 414 U.S. 218, 234 (1973); *Chimel*, 395 U.S. at 762-63).

The Court in *Belton* applied those rationales to the arrest of an "oc-cupant" of an automobile. *See Belton*, 453 U.S. at 460. In *Belton*, a police officer stopped four men, who had sped past the officer. *Id.* at 455. The officer "gave chase, overtook the speeding vehicle, and ordered its driver to pull it over to the side of the road and stop." *Id.* After examining the driver's license and the vehicle registration, the officer determined that none of the men owned the vehicle. *Id.* During that time, the officer also smelled burnt marijuana and saw, on the floor of the car, an envelope marked "Supergold," which he associ-ated with marijuana. *Id.* at 455-56. Accordingly, the officer directed the men to get out of the car and arrested them for unlawful posses-sion of marijuana. *Id.* at 456. After they exited the vehicle, the officer patted down each of them and "`split them into four separate areas of the Thruway . . . so they would not be in physical touching area of each other.'" *Id.* The officer then searched the passenger compart-ment; he found Belton's jacket on the back seat, unzipped one of the pockets of the jacket, and found cocaine. *Id.*

The Supreme Court rejected Belton's argument that the search of the passenger compartment of the car exceeded the permissible scope of the search incident to his arrest. The Court began its analysis by observing that for the protection of the Fourth and Fourteenth Amend-ments to be realized, courts must fashion a clear set of rules that allow police officers to easily determine in most situations "whether an invasion of privacy is justified in the interest of law enforcement." *Id.* at 458 (internal quotation marks omitted). Thus, the Court reasoned,

5

"[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *Id.* (internal quotation marks omitted).

The Court then noted the difficulty courts had experienced in fashioning such a rule in the context of an automobile search incident to an arrest:

> While the *Chimel* case established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its recent occupant.

*Id.* at 460. Because articles within a car's passenger compartment "are in fact generally, even if not inevitably, within`the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m],'" the *Belton* Court established the "workable rule" that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* at 460 (quoting *Chimel*, 395 U.S. at 763) (footnotes omitted).[1]

### B.

Thornton contends that the *Belton* rule does not govern this case because he was not an "occupant of an automobile" when Officer Nichols confronted him. In support of this contention, Thornton relies primarily on a line of authority from the United States Court of Appeals for the Sixth Circuit. *See, e.g.*, *United States v. Hudgins*, 52 F.3d 115, 119 (6th Cir. 1995); *United States v. Strahan*, 984 F.2d 155,

---

[1] Although using "occupant " in stating its holding, the *Belton* Court also, as noted above, referred to a "recent occupant." *See id.* at 460; *id.* at 463 (Brennan, J., dissenting); *see also United States v. Franco*, 981 F.2d 470, 473 (10th Cir. 1992) (citing *Belton* for the proposition that "[i]ncident to an arrest, police officers may search a vehicle of which the arrestee was a recent occupant").

159 (6th Cir. 1993). In *Hudgins*, the court elaborated on the principle that Thornton urges us to adopt:

> Where the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile, and the officer subsequently arrests the defendant (regardless of whether the defendant has been removed from or has exited the automobile), a subsequent search of the automobile's passenger compartment falls within the scope of *Belton* and will be upheld as reasonable.
>
> . . . .
>
> . . . However, *where the defendant has voluntarily exited the automobile and begun walking away from the automobile before the officer has initiated contact with him, the case does not fit within Belton's bright-line rule*, and a case-by-case analysis of the reasonableness of the search under *Chimel* becomes necessary.

52 F.3d at 119 (emphasis added). *See also Strahan*, 984 F.2d at 156-57, 159 (following this rule and finding that *Belton* did not apply because police *silently* observed the defendant park and exit his automobile and then immediately apprehended him approximately 30 feet away).

This court has not previously addressed the Sixth Circuit's limitation on the *Belton* rule in a published opinion. We note, however, that other courts of appeals have considered the question. Although one court previously embraced a rule consistent with the Sixth Circuit's limitation, *see United States v. Fafowora*, 865 F.2d 360, 362 (D.C. Cir. 1989) (holding that "ambiguity" necessitating *Belton*'s bright-line rule does not apply "where the police come upon the arrestees outside of an automobile"), three others have refused to do so. *See United States v. Sholola*, 124 F.3d 803, 817 (7th Cir. 1997) (holding that defendant who was next to open car door ready to enter it, was "`positively linked to [car] prior to his arrest'") (quoting *United States v. Adams*, 26 F.3d 702, 705 (7th Cir. 1994)); *United States v. Snook*, 88 F.3d 605, 606 (8th Cir. 1996) (holding that fact that defendant "had

7

just stepped out of his vehicle as the officer arrived and before his arrest does not alter his status as an `occupant' of the vehicle"); *United States v. Franco*, 981 F.2d 470, 473 (10th Cir. 1992) (declining to adopt rule, advanced by defendant, that "unless an arrest was made in the arrestee's automobile, a search of the automobile was not `incident to the arrest' for the purpose of that exception to the warrant requirement").

State courts have also struggled with this issue. *Compare, e.g.*, *State v. Stehman*, 783 N.E.2d 1, 6 (Ill. 2002) ("[W]e find the . . . analysis of the Sixth Circuit Court of Appeals in [ *Hudgins*] persuasive."), *with State v. Wanzek*, 598 N.W.2d 811, 815 (N.D. 1999) ("We are not persuaded by the line of cases which hold an arrestee is an occupant only when arrested inside the vehicle or where the police initiate contact with the arrestee before the arrestee exits the vehicle."); *Glasco v. Commonwealth*, 513 S.E.2d 137, 141-42 (Va. 1999) (same).

Given this division, it is not surprising that the Supreme Court recently granted certiorari on the question of whether *Belton*'s "bright-line" rule "is limited to situations in which the officer initiates contact with the occupant of a vehicle while that person remains inside the vehicle." *Florida v. Thomas*, 532 U.S. 774, 776 (2001). In *Thomas*, Florida's highest court expressly adopted the Sixth Circuit's approach. *See Thomas v. State*, 761 So.2d 1010, 1013 (Fla. 1999) ("We find the recent analysis of the Sixth Circuit Court of Appeals in [*Hudgins*] persuasive."). After full briefing and oral argument, however, the Supreme Court dismissed the case for want of jurisdiction. *See Thomas*, 532 U.S. at 781.

After carefully considering the question and the conflicting authority, we join those courts that have rejected the limitation of *Belton* to situations in which "the officer initiates contact with the defendant, either by actually confronting the defendant or by signaling confrontation with the defendant, while the defendant is still in the automobile." *Hudgins*, 52 F.3d at 119. We do so for a number of reasons.

First, the Supreme Court has clearly indicated, albeit in dicta, that an officer may search an automobile incident to an arrest, even if the officer has not initiated contact while the arrestee was still in the automobile. In *Michigan v. Long*, 463 U.S. 1032 (1983), officers on patrol

8

in a rural area observed a speeding car turn down a road and swerve into a shallow ditch. *Id.* at 1035. When the officers arrived at the scene, they met Long, the sole occupant of the vehicle, "at the rear of the car, which was protruding from the ditch onto the road," with the driver's side door open. *Id.* at 1035-36. Although affirming a subsequent search of the car's passenger compartment as a protective one under *Terry v. Ohio*, 392 U.S. 1 (1968), the Court noted at the outset that "[i]t is clear, and the respondent concedes, that if the officers had arrested Long . . . they could have searched the passenger compartment [under *Belton*]." *Id.* at 1035 n.1. The Court further explained:

> We stress that our decision does not mean that the police may conduct automobile searches *whenever* they conduct an investigative stop, although the "bright line" that we drew in *Belton* clearly authorizes such a search whenever officers effect a custodial arrest. An additional interest exists in the arrest context, *i.e.*, preservation of evidence, and this justifies an "automatic" search.

*Id.* at 1049 n.14 (emphasis in original); *see also Thomas*, 532 U.S. at 776 (emphasizing the "bright-line" nature of the *Belton* rule).

Further, the historical rationales for the search incident to arrest doctrine — "the need to disarm the suspect in order to take him into custody" and "the need to preserve evidence for later use at trial" — do not permit the limitation on the *Belton* rule that the Sixth Circuit has adopted and Thornton espouses. *Knowles*, 525 U.S. at 116. "`[D]anger to an officer'" from an arrest and the "need to discover and preserve evidence" continue to be concerns regardless of whether the arrestee exits the automobile voluntarily or because of confrontation with an officer. *Id.* at 117-18 (quoting *Robinson*, 414 U.S. at 234-35). Neither the Sixth Circuit nor Thornton suggest otherwise.

Indeed, we believe that Thornton's proposed limitation of the *Belton* rule would raise serious safety concerns for law enforcement personnel. A rule that requires officers to actually confront or signal confrontation with an arrestee while the arrestee is in the automobile, in order to justify a search of the automobile incident to arrest, could very well endanger an officer. For instance, we can certainly imagine the hesitancy of an officer to activate his lights and sirens if the offi-

9

cer encounters the arrestee while conducting undercover surveillance in an area. Moreover, when encountering a dangerous suspect, it may often be much safer for officers to wait until the suspect has exited a vehicle before signaling their presence, thereby depriving the suspect of any weapons he may have in his vehicle, the protective cover of the vehicle, and the possibility of using the vehicle itself as either a weapon or a means of flight. Mandating that officers alert a suspect to their presence before he sheds the protective confines of his vehicle would force officers to choose between forfeiting the opportunity to preserve evidence for later use at trial and increasing the risk to their own lives and the lives of others. We decline to require officers to make this choice. *See Wanzek*, 598 N.W.2d at 815 (The cases adopting the proposed limitation "raise grave public policy issues because they create serious concerns for the safety of officers and others."); *Thomas*, 761 So.2d at 1014-15 (Wells, J., dissenting) ("The reason for this bright-line rule is officer safety, which is equally as much a concern whether the officer initiates the contact, actually confronts the person, or the person voluntarily exits the vehicle as long as the connection with the vehicle is proximate to the arrest."); *Stehman*, 783 N.E.2d at 11 (Thomas, J., dissenting) ("[W]hether the defendant exits voluntarily or involuntarily, there is always a danger to the officer associated with the subsequent arrest and the proximity of the vehicle.").

Additionally, the limitation on the *Belton* rule that Thornton urges could "encourage individuals to avoid lawful searches of their vehicles by rapidly exiting or moving away from the vehicle as officers approached." *Wanzek*, 598 N.W.2d at 815. Surely, "[p]olice officers should not have to race from their vehicles to the arrestee's vehicle to prevent the arrestee from getting out of the vehicle in order to conduct a valid search." *Id.*

Nonetheless, we recognize the concerns of those courts that have attempted to limit the scope of *Belton* to situations in which officers have initiated contact with arrestees while still in the automobile. The *Belton* rule cannot be stretched so as to render it limitless by permitting officers to search any vehicle from which an arrestee has emerged, regardless of how much time has elapsed since his exit or how far he is from the vehicle when arrested.

10

In the case at hand, however, we note that Thornton concedes that he was in close proximity to his vehicle when Officer Nichols approached him. His concession is well-taken. Although the record is not clear as to the precise distance between Thornton and his automobile when Officer Nichols confronted him, the record does conclusively show that Officer Nichols observed Thornton park and exit his automobile and then approached Thornton *within moments*.

Thus, "no doubt exists that the car was within [Thornton's] immediate control at the beginning of his encounter with" Officer Nichols. *See United States v. Johnson*, 114 F.3d 435, 440 (4th Cir. 1997) (so noting in case involving question of unreasonable delay between arrest and search of car). Stated differently, Thornton "was `positively linked' to the searched vehicle prior to his arrest." *Sholola*, 124 F.3d at 817 (quoting *Adams*, 26 F.3d at 705); *id.* at 823 (Wood, J., concurring) ("The `positive link' required must, in keeping with *Belton*, be one that requires physical proximity that is the equivalent of occupancy of the automobile."); *see also Franco*, 981 F.2d at 473 (affirming validity of search under *Belton* because defendant "was a recent occupant of his vehicle[,]" "the arrest was made in close proximity to his vehicle[,]" and "[d]uring the illegal transaction [defendant] exercised control over his vehicle and its contents"). The conceded close proximity, both temporally and spatially, of Thornton and his car at the time of his arrest provides adequate assurance that application of the *Belton* rule to cases like this one does not render that rule limitless.[2] Accordingly, we hold that Officer Nichols lawfully searched Thornton's automobile incident to the arrest. Because we affirm on this ground, we decline to reach the district court's alternative holding that Officer Nichols could have conducted a lawful inventory search.

---

[2] We also note that circuit precedent, which Thornton does not challenge, permitted Officer Nichols to separate Thornton from the vehicle (in this case by handcuffing him and placing him in the patrol car) prior to the search. *See United States v. Milton*, 52 F.3d 78, 80 (4th Cir. 1995) (holding that *Belton* "applies even if the arrestee has been separated from [the vehicle] prior to the search of the passenger compartment" (internal quotation marks omitted)); *see also* 3 Wayne R. LaFave, *Search & Seizure* § 7.1(c), at 448-49 (3d ed. 1996 & Supp. 2003) ("[U]nder *Belton* a search of the vehicle is allowed even after the defendant was removed from it, handcuffed, and placed in the squad car, or even if a single defendant was in the custody of several officers.") (footnotes omitted)).

III.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

12