[Cite as *State v. Chandler*, 2015-Ohio-396.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                     Court of Appeals Nos. L-13-1271

        Appellee

                                        Trial Court Nos. CR0201202266

v.

Danny G. Chandler                          **DECISION AND JUDGMENT**

        Appellant                        Decided:  January 30, 2015

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
David F. Cooper, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

{¶ 1} Appellant, Danny Chandler, appeals his conviction in the Lucas County

Court of Common Pleas, following a jury trial, of two counts of aggravated possession of

drugs and two counts of aggravated trafficking in drugs.  We affirm.

## A. Facts and Procedural Background

{¶ 2} On August 3, 2012, the Lucas County Grand Jury indicted appellant on five felony charges: (1) aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(c), a felony of the second degree; (2) aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(d), a felony of the first degree; (3) aggravated possession of drugs in violation of R.C. 2925.11(A) and (C)(1)(b), a felony of the third degree; (4) aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2) and (C)(1)(c), a felony of the second degree, and (5) trafficking in marijuana in violation of R.C. 2925.03(A)(2) and (C)(3)(b), a felony of the fourth degree.

{¶ 3} Appellant entered an initial plea of not guilty. Thereafter, he moved to suppress all of the drug evidence seized by the police as the fruits of an unconstitutional search and seizure. Following a hearing, the trial court denied appellant's motion to suppress, and the matter proceeded to a jury trial.

{¶ 4} The charges stemmed from events that occurred on April 24, 2012. The testimony from the suppression hearing and trial revealed that on that day, Toledo Police Detective Israel Garrett and four other detectives were returning from delivering a warrant when they drove by the house at 346 Mettler in Toledo, Ohio. Garrett testified that the house had been under surveillance recently for suspected drug activity. At the time the detectives drove by, Garrett noticed a car parked on the grass near the house with a person leaning into its passenger side window. Believing that a drug transaction might be occurring, the detectives pulled into an alley nearby. The detectives, still

2.

wearing their raid gear, exited their vehicle and approached the parked car from the rear. By that time, the person who had been standing beside the car had left, but two people remained inside the car. It was later discovered that appellant was in the driver's seat, and appellant's cousin, Travis Williams, was in the passenger's seat. Garrett testified that as they approached the vehicle, he could smell a strong odor of marijuana. In addition, he testified that as he got closer, he could see a baggie between appellant's legs. Therefore, the detectives ordered appellant and Williams out of the car. Garrett inspected the baggie and found that it contained marijuana. A subsequent search of appellant and the car revealed a second baggie of marijuana, two pills of ecstasy, a digital scale, and $1,095.

{¶ 5} Garrett testified that after reading appellant his Miranda rights, he asked appellant if he lived at 346 Mettler. Appellant replied that he did not live there, but that it was his mother's, Tina Chandler, house, and he would sometimes change clothes there. With this information, Garrett approached the rear of the house, where Tina stayed, and asked to speak with her. Garrett requested permission to search the location of the house where appellant changed his clothes. Tina agreed to allow the search, but told the detectives to come to the front of the house, where appellant's room was. Notably, it took several minutes for Tina to go to the front door to meet the detectives.

{¶ 6} Prior to beginning their search, Garrett had Tina sign a form consenting to the search and waiving her right to require the detectives to obtain a search warrant. The subsequent search of appellant's room revealed a gun holster, ammunition, pill bottles

3.

containing marijuana and ecstasy, sandwich baggies, and another digital scale. A chemical analysis of the drugs revealed two different forms of ecstasy.[1] One of those forms matched the pills found in the vehicle. It was stipulated at trial that the amount of the drugs exceeded the bulk amount.

{¶ 7} After appellant was arrested and booked into jail, he made a phone call to the house at 346 Mettler that was recorded and played for the jury. In the call, appellant asked what the police got, and Tina replied that they got the gun magazine, and "they didn't get, all they got was the x. I didn't know where it was."

{¶ 8} Appellant then asked to speak with Kenneth Fulce, aka "Cush." Appellant told Fulce, "Remember where I told you where the cash at, * * * get everything out that motherf***er." Fulce later asked appellant if he should accompany appellant's friend, Ashley Leavell, to work, talking about "the burgers and donuts." In an apparent miscommunication, appellant says Fulce should be with her for the paper; that Fulce and Leavell are in control of appellant's paper. Fulce replies, "but we ain't got your phone." Exasperated, and realizing the miscommunication, appellant said, "No, I'm not talking about that. That s**t, man, don't worry about that." Following the playing of the call, Garrett testified that "paper" is another term for cash. He also testified that the burgers and donuts comment referred to drugs, and that the phone was important because that is how customers would contact the dealer to buy their drugs.

---

[1] One form was benzylphiperazine, and the other was 5-Meo-DIPT. The two different drug compositions formed the basis for the two separate pairs of aggravated possession and trafficking charges.

4.

{¶ 9} Appellant next spoke with Leavell. Leavell informed him that she was the one that hid appellant's bag, and she is the only one who knows where the bag is. Appellant told her to "get that s**t to your granny's." They then discussed who had keys to the house, and appellant put Leavell in charge of gathering the keys and making sure that no one had access to appellant's room.

{¶ 10} Appellant, as his defense, presented witnesses to establish that he did not live at 346 Mettler, that many people had access to that house and to the area where the drugs were found, and that it was Tina's ex-husband, Michael Crocket, who was the one dealing drugs.

{¶ 11} Appellant's first witness, Alfreda Brown, testified that appellant lived with her, and that he left her residence on April 24, 2012, to go check in on his mother, who had health issues, and to wash his car.

{¶ 12} Appellant next called his sister, Marquelle Chandler, who testified that she was a certified state tested nurse's assistant, and that she worked as a home health aid for their mother. Marquelle stated that on the morning of April 24, 2012, Crocket was in the home at 346 Mettler. Marquelle observed that Crocket was on the phone, pacing around with a white pill bottle in his hand. She testified that Crocket took the pill bottle into the room that the police eventually searched. Regarding access to the house, Marquelle testified that approximately five or six people had keys to the house, including appellant, Crocket, and Fulce.

5.

{¶ 13} Travis Williams, the other person in the car with appellant, testified next. Williams stated that he saw Crocket approach appellant as appellant was washing his car. Williams testified that appellant purchased a bag of marijuana from Crocket. Appellant had Williams roll up a portion of the marijuana to smoke. Then, one of appellant's neighbors approached the car to compliment appellant on how clean the car was and to inquire if the car was as clean on the inside as it was on the outside. Williams stated that the police arrived shortly after appellant's neighbor left.

{¶ 14} Finally, appellant took the stand in his own defense. He testified that he went over to his mother's house on April 24, 2012, to wash his car and to buy marijuana and ecstasy from Crocket. He stated that he purchased the drugs for his personal use, not to sell. Appellant testified that after he purchased the drugs, he was in his car when his neighbor came up to the side of the vehicle. The neighbor complimented appellant on the vehicle and left. Appellant reaffirmed that no drug transaction took place at that time. It was then that the police arrived and found the drugs and money. Regarding the cash, appellant testified that part of the money was for his daughter's tuition to a Catholic high school. He further commented that he was not working at the time, but had recently worked for a friend watching over vacant homes, and the money came from the payments for that work.

{¶ 15} Appellant next testified about the phone call from the jail. He explained that he asked his mother what the police found because he knew he only had the marijuana and two ecstasy pills on him, and he wondered why he was facing so many

6.

drug charges. He also explained that the burgers and donuts dialogue referred to Leavell's employment at McDonalds and Duncan Donuts, and the need to get cash to pay his bond and hire an attorney.

{¶ 16} Following the presentation of evidence, closing arguments, and jury instructions, the jury deliberated and returned a verdict of guilty as to the two aggravated possession and two aggravated trafficking charges,[2] and a verdict of not guilty to the trafficking in marijuana charge. At sentencing, the trial court ordered appellant to serve three years in prison on the charges of aggravated possession and trafficking in benzylphiperazine, and two years in prison on the charges of aggravated possession and trafficking in 5-Meo-DIPT. The court ordered all four sentences to be served concurrently for a total prison term of three years.

## B. Assignments of Error

{¶ 17} Appellant has timely appealed his conviction, asserting three assignments of error for our review:

1) The State of Ohio failed to provide legally sufficient evidence that Appellant knowingly possessed and knowingly trafficked drugs.

2) Appellant's convictions fell against the manifest weight of the evidence.

---

[2] The two aggravated trafficking charges were reduced to second and third-degree felonies from first and second-degree felonies, respectively, because the jury did not find the enhancing element that the crimes were committed within the presence of a juvenile as alleged in the indictment.

7.

3)  The Trial Court erred in not granting Appellant's motion to suppress evidence as the result of an illegal search and seizure.

## II. Analysis

{¶ 18} For ease of discussion, we will address appellant's assignments of error out of order, beginning with his third assignment of error.

## A.  Motion to Suppress

{¶ 19} In his third assignment of error, appellant argues that the drug evidence seized from his car and from 346 Mettler should have been suppressed as the fruits of an unconstitutional search and seizure.

{¶ 20} Appellate review of a decision on a motion to suppress presents a mixed question of law and fact. *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992).  "[A]n appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982).  "[T]he appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*, citing *State v. McNamara,* 124 Ohio App.3d 706, 707 N.E.2d 539 (4th Dist.1997).

**{¶ 21}** The facts in this case with regard to the motion to suppress are not in dispute. Rather, appellant argues that the initial detention of his vehicle was not supported by reasonable suspicion or probable cause. He contends that no traffic violation had been committed, and that there were no additional, specific, and articulable facts that would have reasonably led the detectives to believe that he was involved in criminal activity. The state, on the other hand, argues that the stop was warranted by the location of the car in a suspected drug area, the presence of a person leaning into the vehicle, and the fact that the car was parked illegally in the grass in violation of Toledo Municipal Code 351.07(a)(29).[3]

**{¶ 22}** "[A] police officer may stop and investigate unusual behavior, even without probable cause to arrest, when he reasonably concludes that the individual is engaged in criminal activity." *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). "In assessing that conclusion, the officer 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Id.*, quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

**{¶ 23}** Here, Garrett testified that he observed a parked vehicle in an area that was under surveillance for suspected drug activity, that he observed a person leaning into the vehicle, that the person had left by the time the detectives approached, and that he

---

[3] Toledo Municipal Code 351.07(a)(29) provides, in relevant part, "No person, in any of the following places where signs are not required, shall: * * * (29) Stand or park a vehicle in the area between the pavement edge and property line on any curbed street or highway inside a business or residence district."

9.

smelled a strong odor of marijuana as he came near to the vehicle. Based on these facts, we hold that the detectives had reasonable suspicion to initiate an investigatory stop of appellant. *See State v. Johnson*, 2d Dist. Montgomery No. 19203, 2002-Ohio-4684, ¶ 38 (investigatory stop justified where officer believed drug transaction to be in progress where defendant was with a known drug trafficker in an area known for drug transactions, and a person leaned with both arms into defendant's car window, and the individual left when the officer approached); *State v. Dotson*, 9th Dist. Summit No. 19053, 1998 WL 852573, *3 (Dec. 9, 1998) (investigatory stop proper where defendant stopped her car in an area known for drug activity, a man leaned in the passenger side of the car, and the two dispersed when they saw the police officers).

{¶ 24} Alternatively, the investigatory stop was justified based on appellant's violation of the Toledo Municipal Code. *See Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996) ("[W]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid regardless of the officer's underlying subjective intent or motivation for stopping the vehicle in question.").

{¶ 25} Further, once Garrett observed the baggie between appellant's legs, and the baggie was found to contain marijuana, Garrett had probable cause to arrest appellant. The subsequent search of the passenger compartment of the vehicle was then justified as a search incident to arrest. *State v. Murrell*, 94 Ohio St.3d 489, 496, 764 N.E.2d 986 (2002). Finally, we point out that the search of the house without a warrant was

10.

permissible as it was conducted with Tina's consent. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) ("It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent.").

{¶ 26} Therefore, we find that the trial court did not err when it denied appellant's motion to suppress evidence as the result of an illegal search and seizure. Accordingly, appellant's third assignment of error is not well-taken.

## B. Sufficiency of the Evidence

{¶ 27} In his first assignment of error, appellant challenges the sufficiency of the evidence supporting his conviction. Specifically, he argues that the state failed to produce sufficient evidence that he knowingly possessed the drugs.

{¶ 28} "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 29} Appellant was convicted under R.C. 2925.11(A), which provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." Under the Revised Code, "possess" means "having control over a

11.

thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

{¶ 30} Appellant argues that there is no evidence of knowing possession of the drugs because Garrett had never seen appellant at the property, there was no evidence that appellant's belongings were found in the searched room, and there was no testimony regarding where in the room the drugs were found. We disagree.

{¶ 31} Garrett testified that Tina took the detectives to the room where appellant kept his belongings. The drugs were discovered in that room, and a chemical analysis showed that the drugs matched the pills appellant had with him in his vehicle. Further, the recorded phone call from jail evidenced that appellant exerted control over the drugs, as he was the one to order Fulce and Leavell to get the money and the bags out of the house. From this, we conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant knowingly possessed the drugs.

{¶ 32} Appellant also contends that there was no evidence presented to show that he knowingly prepared the drugs for sale. Pursuant to R.C. 2925.03(A)(2), no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." Here, the search of the room revealed a large quantity of ecstasy, as well as baggies and a

12.

digital scale.  Further, the search of appellant and his vehicle revealed another digital scale and a large amount of cash.  We hold that a rational trier of fact, when viewing this evidence in a light most favorable to the prosecution, could find beyond a reasonable doubt that appellant was trafficking in drugs.

{¶ 33} Accordingly, appellant's first assignment of error is not well-taken.

### C.  Manifest Weight

{¶ 34} Finally, in his second assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.  Appellant contends that the evidence shows that multiple people had access to that room.  Moreover, appellant testified that one of those people, Crocket, had sold drugs to appellant.  Appellant concludes that when considering such evidence, his convictions must be overturned.

{¶ 35} When reviewing a manifest weight claim, the appellate court sits as a "thirteenth juror" and, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 36} Upon our careful consideration of the entire record, we do not find that this is the exceptional case warranting a reversal and new trial.  Appellant was found with

13.

marijuana and ecstasy in his vehicle, along with a large amount of cash and a digital scale. When the police asked to search the area of 346 Mettler where appellant kept his belongings, Tina took them to the front room where the drugs, baggies, and scale were found. In the phone call from the jail, Tina implied that she hid other things, but was unable to hide the ecstasy because she could not find it. Appellant then gave directions to Fulce and Leavell regarding what to do next with the money and the contents of the other bag. From this, we conclude that the jury did not clearly lose its way or create a manifest miscarriage of justice when it found appellant guilty of aggravated possession and trafficking of drugs.

{¶ 37} Accordingly, appellant's second assignment of error is not well-taken.

### III. Conclusion

{¶ 38} For the foregoing reasons, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J. _____

_____
JUDGE

Thomas J. Osowik, J. _____

_____
JUDGE

Stephen A. Yarbrough, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.